IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CHRISTOPHER SAWYER,

    Plaintiff,

v.                                                                    No. 03-2261 B

CITY OF MEMPHIS, et al.,

    Defendants,

and

BRITT SHANE HUTCHINSON,

    Plaintiff,

v.

CITY OF MEMPHIS, et al.,

    Defendants.

---

ORDER GRANTING DEFENDANT CITY OF MEMPHIS' MOTION
FOR SUMMARY JUDGMENT

---

Before the Court is the motion of the Defendant, City of Memphis ("the City"), for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The Rule provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

   The background facts of this case were detailed in full in the Court's April 2, 2004 order granting in part and denying in part the motion of the Defendant City of Memphis to dismiss the Plaintiffs' complaint.  Rather than repeat itself here, the Court will provide a summary and only address in detail those facts not previously presented.  The instant action arises from an encounter between the Plaintiffs and individually named Defendant Officers Hannah and Kosso at approximately 12:30 am on April 21, 2002 in Overton Park in Memphis, Tennessee.  After concluding volunteer work for an Earth Day celebration, the Plaintiffs were stopped by the officers

for being in the park after hours.  (Dep. Christopher Robin Sawyer, March 18, 2005 ("Sawyer Dep. March 18") at 117.)  The specific events which occurred during the stop are in dispute as described in the prior orders of the Court.  However, Plaintiff Sawyer alleges to have sustained back injuries as a result of the actions of Defendants Hannah and Kosso during the encounter.

At issue in the instant motion are the Plaintiffs claims against the City, pursuant to 42 U.S.C. § 1983, for violation of their rights under the First and Fourth Amendments to the United States Constitution.  Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."  42 U.S.C. § 1983.  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001).

Local governments such as the City of Memphis are considered "persons" for purposes of § 1983.  Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000).  This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978).  Instead, the Supreme Court has held that "a plaintiff seeking

to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of County Comm'rs of Bryan County,' Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing Monell, 436 U.S. at 694, 98 S.Ct. at 2027); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986); and City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)).  The Sixth Circuit has instructed that

> [f]or liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort.  Such a requirement ensures that a [municipality] is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [municipality].  The "policy" requirement is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials.  Instead, the "policy" requirement is meant to distinguish those injuries for which the [municipality] is responsible under § 1983, from those injuries for which the [municipality] should not be held accountable.

Gregory v. Shelby County, Tenn., 220 F.3d 433, 441 (6th Cir. 2000) (internal citations omitted). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (citing Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36).

> A "custom" for purposes of Monell liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and citations omitted).  A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim.  Conclusory allegations will not lie.  Culberson v. Doan, 125 F.Supp.2d 252,

263-64 (S.D. Ohio 2000). The Supreme Court has consistently held that a municipality may not be held liable solely on the basis of respondeat superior. See Brown, 520 U.S. at 404, 117 S.Ct. at 1388; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); Canton, 489 U.S. at 385, 109 S.Ct. at 1203; City of St. Louis v. Praprotnik, 485 U.S. 112, 121-22, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); Pembaur, 475 U.S. at 478, 106 S.Ct. at 1297-98.

It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original). Thus, to recover, the Plaintiffs'

> must show that [their] civil rights were violated pursuant to and as a direct result of the [city's] official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [city], and that the policy or custom caused [their] constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted). In a case alleging failure to train officers or to investigate, a plaintiff must also establish that the municipality's failure "in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." See Ferguson v. Leiter, 220 F.Supp.2d 875, 884 (N.D. Ohio 2002) (quoting Canton, 489 U.S. at 389, 109 S.Ct.1197); Humes, 154 F.Supp.2d at 1363.

The basis for the City's motion for summary judgment is that the Plaintiffs have failed to

establish the existence of a municipal policy supporting liability. In response, Plaintiffs maintain that the policies and procedures of the City regarding the use of handcuffs and the manner in which handcuffing is carried out are responsible for the deprivation of their rights under the First and Fourth Amendments. (Pl.'s Mem. Resp. Mot. Summ. J. ("Pl.'s Resp.") at 12.) Sawyer and Hutchinson maintain that it is the Defendant's policy to handcuff all persons being detained relative to a criminal investigation. (Id. at 5.) Plaintiffs complain that the City failed to train its officers in the proper techniques for handling handcuffed persons and, as a result, the procedures used by the officers in carrying out the City's policy for using handcuffs resulted in a deprivation of Plaintiff's constitutional rights. (Id.)

The handcuffing policy relied upon by Sawyer and Hutchinson provides that "[a]ll arrested persons who are to be transported by the Memphis Police Department Officers shall be handcuffed with their hands behind their back and the handcuffs double locked. This includes persons being detained by officers relative to a criminal investigation." (Memphis Police Department Policy and Procedures, ("MPD Policies") Section I, Chapter II, at 3.) Relative to their First Amendment rights, Plaintiffs take issue with the Defendant's failure to institute a policy requiring its officers to ask for or permit an explanation of the circumstances providing cause for detention prior to handcuffing persons relative to a criminal investigation. (Pl.'s Resp. at 11.) However, it is clear that the referenced policy, entitled "Handcuffing Techniques," relates only to the manner in which arrested persons or persons who are detained in connection with a criminal investigation are to be handcuffed, i.e. "with their hands behind their back and the handcuffs double locked," and does not address protocol required before such action is taken. (MPD Policies, Section I, Chapter II, at 1, 3.)

Plaintiffs have cited no policy or custom by the Defendant which caused injury to their First Amendment rights. To the extent that Sawyer and Hutchinson contend that the failure of the officers to permit an explanation for their presence in the park prior to handcuffing demonstrates an unconstitutional custom by the Defendant, they have failed to allege that such practice was so "widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S.Ct. at 1388; see also Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("considerably more proof than [a] single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation."). They have not alleged any policy or custom of retaliation for exercise of their free speech rights. See Thaddeus-X v. Blatter, 175 F.3d 378, 394-95 (6th Cir. 1999) (recognizing a Section 1983 claim arising from a state official's retaliation against an individual for exercise of his First Amendment rights). Further, Plaintiffs do not maintain that the City failed to train its officers to elicit or permit explanations prior to handcuffing persons relative to criminal investigations, or that any such failure amounts to deliberate indifference to the First Amendment rights of its citizens. See Ferguson, 220 F.Supp.2d at 884. Accordingly, based on the deficiency of Plaintiffs' proof, their First Amendment claims against the Defendant are DISMISSED.

Sawyer and Hutchinson also maintain that the Defendant's handcuffing policy and the manner in which it was carried out by Officers Hannah and Kosso resulted in a deprivation of their Fourth Amendment rights. While Plaintiffs do not cite with particularity the injury complained of in response to the instant motion, their complaints allege violation of their Fourth Amendment rights to be free from excessive force and for safe treatment. (Hutchinson Compl. V, ¶ 1; Sawyer Compl. V, ¶ 1.) In regard to injuries sustained from handcuffing, Sawyer alleges in his complaint that

7

Defendant Officer Hannah placed handcuffs on him and "tightened them to the point where they bit [sic] into [his] wrist." (Sawyer Compl. ¶ 8.) While the parties dispute the severity and the manner in which the injuries occurred, the Defendant does not refute Sawyer's assertion that he sustained a back injury and a gash on his back during the April 21, 2002 stop. Plaintiffs' response states that Hutchinson was also handcuffed, but he does not claim any physical injuries resulting from the action.[1]

As noted above, the handcuffing policy cited by Plaintiffs in response to the instant motion relates to the technique to be used by officers when arresting individuals or detaining them pursuant to a criminal investigation. Specifically, it directs officers to handcuff arrestees and detainees "with their hands behind their back and the handcuffs double locked." (MPD Policies, Section I, Chapter II, at 3.) The Policy provides exceptions, in the officer's discretion, in the following instances: (1) where the person is age 12 years or younger; (2) the person has an injury or handicap which may be aggravated by handcuffing; and (3) elderly persons who may be injured by handcuffing. (Id. at 4.) The Policy further directs officers that "handcuffs are not to be used to punish or inflict pain" and that they "shall be tightened only to the degree necessary to prevent escape from the handcuffs." (Id.) There is no indication in the facts presented that these policies led to the excessive force or unsafe conditions contended by the Plaintiffs. Moreover, they have not submitted any evidence to suggest that the City has an unwritten custom or policy that led to the alleged constitutional injuries

---

[1] Neither Hutchinson's complaint nor his affidavit offered in support of his response to the City's motion states that he was handcuffed. However, the deposition testimony of Defendant Officer Hannah states that he handcuffed Hutchinson prior to patting him down for weapons and putting him in the back of the police car. (Dep. Frank Hannah ("Hannah Dep.") at 35-36.)

in this case.[2]

Without any discussion, Plaintiffs cite several other policy failures in their response to the Defendants statement of undisputed facts which could be construed to form the basis of their Section 1983 claim against the City. Specifically, Sawyer and Hutchinson aver that the Memphis Police Department does not have any policy or procedure (1) for safely transporting detainees from the point at which the detainee is handcuffed to the patrol car; (2) to provide physical support to detainees who have been handcuffed and are being transported to the squad car; (3) for the safe and suitable transport of handcuffed detainees who have been "temporarily blinded from a spotlight being directed to their eyes" from the location of the detention to the police car. (Pl.'s Resp. Def.'s Statement Facts ¶¶ 46, 47, 92, 93.) However, because the Plaintiffs have offered no evidence of a direct causal link between the City's failure to institute such policies and the alleged constitutional deprivation, liability cannot attach to the City. City of Canton, 489 U.S. at 385.

Beyond the actual policy, Plaintiffs also maintain that the manner in which the officers carried out the City's handcuffing policy resulted in a deprivation of their rights under the Fourth Amendment. (Pl.'s Resp. at 12.) In support, they cite City of Canton, in which the United States Supreme Court held that a city can be liable under Section 1983 for inadequate training of its employees only where such failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388. In Canton, the Supreme Court identified two circumstances indicating deliberate indifference: (1) "failure to provide

---

[2] In addition, Plaintiffs allude, in their response, to an argument that the officers had no basis to handcuff the Plaintiffs in the first instance because there was no ongoing criminal investigation or arrest at the time. (Pl.'s Resp. at 10.) Because they do not offer any policy or custom of the City which led to the handcuffing of the Plaintiffs, other than that cited, liability for any alleged improper handcuffing cannot be attributed to the City.

adequate training in light of foreseeable consequences that could result from the lack of instruction;" and (2) failure "to act in response to repeated complaints of constitutional violations by its officers." Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999) (citing Canton, 489 U.S. at 390, 109 S.Ct. 1197.); see also Board of County Comm'rs of Bryan County, 520 U.S. at 410, 117 S.Ct. at 1391 (stating that a finding of deliberate indifference requires proof that "a municipal actor disregarded a known or obvious consequence of his action.").

In its motion for summary judgment, the City provides the affidavit of Raymond Hopkins, the Commander of Training for the Memphis Police Department, who states that recruits of the police department are "trained extensively on the use of handcuffs." (Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 4, Aff. Raymond Hopkins ("Hopkins Aff.") at 2.)  Further, the City submits evidence that, in accordance with Tennessee state law, all law enforcement officers for the City are required to complete a minimum of 400 hours of instruction and study prior to being commissioned and an additional 40 hours of in-service training each calendar year. (Id. at 3.)  Many officers, including Officers Hannah and Kosso, are initially trained as Police Service Technicians ("PST") which requires approximately 224 to 268 hours of training. (Id. at 3-5.)  Following completion, PSTs attend basic Recruit Police Training during which they undergo an additional 480-600 hours of training.[3] (Id. at 3-4.)  Plaintiffs do not dispute the extensive training required for law enforcement officers or that such training includes the proper use of handcuffs.  Further, they have not alleged that, other than the events of April 21, 2002, the City received complaints regarding use of handcuffs by its officers.  Accordingly, without more, the Court concludes that Plaintiffs have failed to set

---

[3] Defendant Officer Kosso underwent twelve hours of training specifically relating to handcuffing and searching tactics as part of his Basic Police Recruit Training. (Hopkins Aff. Ex. B at 6.)

forth a genuine issue of material fact demonstrating that the City's conduct in training its officers on the use of handcuffs amounted to deliberate indifference to the rights of its citizens.  <u>City of Canton</u>, 489 U.S. at 388.

Because Plaintiffs have failed to demonstrate that a policy or custom of the Defendant caused their constitutional injuries or that a failure of the Defendant to train its employees amounted to deliberate indifference to their constitutional rights, their claims against the City of Memphis pursuant to 42 U.S.C. § 1983 must fail as a matter of law.  Accordingly, Defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED this 16th day of February 2006.

                                                   s/ J. DANIEL BREEN
                                                   UNITED STATES DISTRICT JUDGE